**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA,**

                **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　Case No.  2:12-cv-143 -FTM-99DNF

**KEITH A. BAKER,**

                **Defendants.**
_____

# ORDER

This cause comes before the Court on a Motion for Summary Judgment (Doc. 13) filed by Plaintiff, United States of America; a Response (Doc. 16) filed by Defendant, Keith A. Baker ("Baker"); and a Reply (Doc. 17).

**I. Background**

This cases arises out of the National Health Service Corps Scholarship Program (the "NHCS Scholarship Program"), 42 U.S.C. § 254l, which provides funding for medical students in return for service in communities under served by health services. Baker applied and was awarded an NHCS scholarship in 1980. Under the NHCS Scholarship Program contract, the United States Department of Health and Human Services ("HHS") paid for Baker's "medical school tuition, fees, other reasonable costs, and a monthly stipend" for a total of three years. (Doc. 13 at 3-4). In return, Baker agreed to perform three years of service as a physician "in a health manpower shortage area designated under Section 332 of the Public Heath Services Act [42 U.S.C. § 254(e)] to which the applicant is assigned." (Doc. 13 at 3). In his NHCS Scholarship Program contract,

Baker also agreed that if he failed to complete his service obligation he would be liable to the United States for "an amount equal to three times the scholarship funds awarded, plus interest, as determined by a statutory damages formula." (Doc. 13 at 3); 42 U.S.C. § 254o(b)(1).

Baker completed his degree in 1983, and after obtaining a one-year deferment, was due to begin service in July 1984. (Doc. 13 at 4). Section 254l(f)(1)(B)(v)(ii) of the act authorizes the Secretary of the HHS to "assign" a specific location to the scholarship recipient. However, recognizing that participants are more likely to complete their obligation if they have some input as to the location of their service, the NHSC developed a " 'placement cycle' that allows participants time to 'match to' (arrange employment at) an NHSC-approved site." (Doc. 13 at 4). Pursuant to this process, Baker completed a questionnaire which solicited his geographical preference for assignment as well as any other personal circumstances he wanted the NHSC to consider. Baker was ultimately assigned to the Lee County Migrant Health Clinic ("LCMHC") in Ft. Myers, Florida.

Baker worked at LCMHC for one year, until September 1985 when he was terminated. Having only completed one-year of his three-year obligation, Baker was in danger of defaulting.[1] In January 1986, the NHSC notified Baker that he was being reassigned to the Borinquen Health Care Center ("BHCC") Miami, Florida–Baker never went to Miami. Instead, he filed a wrongful termination suit against LCMHC[2] and sent a letter, through his attorney, on March 17, 1986, asking HHS to " 'await the outcome of my day in court' before taking action to collect on his

---

[1] Baker was placed in default for several months, but that decision was later rescinded.

[2] "Baker was ultimately successful on four of the five counts, losing only on the count seeking damages." (Doc. 16 at 3).

scholarship." (Doc. 13 at 9). HHS did not waive or suspend his service, but offered Baker the option–pursuant to a program created in 1987–to complete his service at one of several NHSC designated sites. Baker chose this option, but failed to select a site by the stated deadline. In June 1989, Baker was given a final opportunity to complete his service requirement at the Federal Bureau of Prisons in Talladega, Alabama. Baker declined, and was placed in default.

It is unclear exactly what transpired between 1990 and 2012. It appears undisputed, however, that Baker failed to complete his service requirement as was placed in default. He began paying back his debt in 1988 and made approximately 164 payments–totaling more than $78,000.00–until 2006 when he stopped making payments. (Doc. 1-2 at 2-3). As of May 21, 2012, Baker owed the United States $386,888.32. (Doc. 13 at 11).

Baker's defense is based primarily on a meeting he had in 2000 with a United States Attorney in Tampa who informed him that "he was entitled to a reduction or termination of [his] obligation." (Doc. 16 at 3). He heard nothing for six years after this meeting, but continued making payments until he stopped receiving statements in 2006. When the statements no longer arrived, Baker concluded that "the NHSC lawyers in Washington, D.C. had finally reviewed his case and had determined that his obligation had been fulfilled." Accordingly, he stopped paying. (Doc. 16 at 4).

The United States brought this suit on March 12, 2012 pursuant to 42 U.S.C.A. § 254o and now moves for summary judgement.[3] The Court has jurisdiction pursuant to 28 U.S.C. § 1345.

---

[3] Defendant does not raise a statute of limitations defense. In 2002, 42 U.S.C.A. § 254o(e) was amended to including the following, "[n]otwithstanding any other provision of Federal or State law, there shall be no limitation on the period within which suit may be filed, a judgment may be enforced, or an action relating to an offset or garnishment, or other action, may be initiated or taken by the

**II. Standard**

A party is entitled to summary judgment when it can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Servs., Inc.*, 252 F. Supp. 2d 1347, 1351-52 (M.D. Fla. 2003). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255.

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324-25 (internal quotations and citations omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id*. at 322, 324-25; *Watson*, 252 F.

---

Secretary, the Attorney General, or the head of another Federal agency, as the case may be, for the repayment of the amount due from an individual under this section." Pub. L. 107-251, Title III, § 313(a), 116 Stat. 1651. Subsection (f) applies the amendment "to any obligation for which a discharge in bankruptcy has not been granted before the date that is 31 days after the date of enactment" the amendment.

Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value") (citations omitted); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).

### III. Analysis

By statute, an NHSC scholar who defaults on his service obligation is liable for liquidated damages of three times the initial scholarship amount plus interest. "That Congress intended the obligation of an NHSC participant be fulfilled except in extreme circumstances is indicated by the punitive nature of the liquidated damage provision set out in § 254o(b)." *See United States v. Melendez,* 944 F.2d 216, 219 (5th Cir. 1991). Baker does not dispute that he is in breach of the NHSC agreement, but he raises two affirmative defenses, (1) that there was an accord and satisfaction which relieved Baker of further payment, and (2) that the HHS decision to find him in default was arbitrary and capricious.

#### A. Accord and Satisfaction

Ordinary contract defenses do not apply to an NHSC contract. As this Court has noted, "[t]he conditions imposed upon an NHSC scholarship recipient arise from statutory directives, not from a negotiated agreement between the parties." *Unites States v. Wilson*, No. 8:05-cv-1082-T-27MAP, 2007 WL 328598 at *3 (M.D. Fla. Jan. 31, 2007) (quoting *United States v. Melendez*, 944 F.2d 216, 219 (5th Cir.1991)); *see also United States v. Vanhorn*, 20 F.3d 104, 110 (4th Cir.1994); *United States v. Becker,* 995 F.2d 779, 783 (7th Cir.1993); *United States v. Citrin*, 972 F.2d 1044,

1049 (9th Cir.1992). By federal law, the United States is entitled to recover liquidated damages from a scholarship recipient who is in breach of an NHSC contract. 42 U.S.C. § 254o(b)(1)(A).

Even assuming that this defense applies, it is based solely on Baker's conversation with an Assistant United States Attorney ("AUSA") and there is no evidence to suggest that the AUSA had authority to cancel the debt, or to reach a superceding agreement with Baker. 31 U.S.C. § 3711(a)(2); 31 C.F.R. § 902.1(b); *United States v. Vonderau*, 837 F.2d 1540, 1541 (11th Cir. 1988) (stating that "[t]he Government cannot be estopped by the action of its agent when that agent acts without authority or contrary to law." (citing *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947))). Pursuant to U.S.C. § 254o(d)(2), Baker's debt could be excused only through a statutory waiver process, discussed below.

**B. Statutory Waiver**

Under the statute, Baker could apply to the Secretary of the Department of Health and Human Services for a partial or total waiver of any service obligation or payment on the grounds that compliance was impossible, involved extreme hardship, or would be unconscionable. 42 U.S.C. § 254o(d)(2). 42 C.F.R. § 62.12(b) states that "[a] participant may seek a waiver or suspension of the service or payment obligations incurred under this part by written request to the Secretary setting forth the bases, circumstances, and causes which support the requested action." The Secretary may waive or suspend service only where compliance "(i) is impossible, or (ii) would involve extreme hardship to the participant and if enforcement of the service or payment obligation would be against equity and good conscience." Impossibility of compliance is triggered only if Baker were physically or mentally disabled. 42 C.F.R. § 62.12(c). Since this provision is not applicable to Baker, the only question is whether payment of the student debt or performance

of the service obligation would pose an extreme hardship on Baker, causing an unconscionable result.

In assessing whether there is undue hardship or whether enforcement would be against good conscience, the Secretary considers:

(1) The participant's present financial resources and obligations;

(2) The participant's estimated future financial resources and obligations; and

(3) The extent to which the participant has problems of a personal nature, such as physical or mental disability, terminal illness in the immediate family which so intrude on the participant's present and future ability to perform as to raise a presumption that the individual will be unable to perform the obligation incurred.

42 C.F.R. § 62.12(d). Baker argues that his March 17, 1986 letter, asking HHS to "await the outcome of [his] day in court," constitutes a request for such a waiver, and that HHS placed him in default without even considering his request for a "temporary suspension." (Doc. 16 at 11). Baker argues that this decision was "arbitrary and capricious, an abuse of discretion, and not in accordance with law." (Doc. 16 at 11).

Baker's March 17, 1986 letter is clearly not a request for a waiver or suspension of his service requirement. HHS has a prescribed process for applying for waiver of the service requirement in cases of extreme hardship. The applicable regulation requires an applicant to request a waiver in writing and provide financial and other documentation supporting the request. *See* 42 C.F.R. §§ 62.12(b)(1), (d). When HHS receives a written request for a waiver, it sends the individual "a packet explaining the waiver criteria and containing instructions on the medical and financial documents that the applicant needs to submit for processing the formal request." *Singer v. Dept. of Health and Human Servs.*, 641 F. Supp. 2d 1219, 1223 (D. Utah 2009).

According to Mark Wheeler, the Director of the Office of Legal and Compliance within the Bureau of Clinician Recruitment and Service of the HHS, the agency did not consider Baker's letter to be a request for waiver or suspension. (Doc. 17-2). Rather, it treated the letter as a request to "hold off on putting [Baker] in default" until the lawsuit was resolved. (Doc. 17-2). Since the waiver and suspension provisions of the statute and regulations do not encompass this type of request, the agency did not treat it as such. (Doc. 17-2).

Baker asserts in response that "[t]he context and language of this letter would clearly indicate to an employee at HHS that Baker sought temporary suspension of his default status or service obligation pending the outcome of the litigation." (Doc. 16 at 10). There is no legal authority, however, that requires NHSC to consider such a vague request as a request for a waiver. *Singer*, 641 F. Supp. 2d at 1228. Baker never formally requested any waiver or suspension of his obligation, he merely requested that HHS await the outcome of a lawsuit before it reassigned him. HHS was not required to do anything in response to this request. Thus, there is no agency action for this Court to review.[4]

Accordingly, under the terms of the statute and regulations, Baker is liable to the United States for damages calculated according to the formula set forth in 42 U.S.C. § 254o, plus applicable interest, less the amount he has already paid.

It is therefore,

---

[4] To the extent Baker argues that NHSC should have granted him a waiver anyway, the Court cannot review the United States' alleged failure to provide a waiver because Baker has not exhausted his administrative remedies–he never actually requested a waiver. *Wilson*, 2007 WL 328598 at *4 (citing *United States v. Barry*, 904 F.2d 29, 31 (11th Cir. 1990)).

**ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 13) is **GRANTED.** The Clerk is directed to enter judgment in favor of the Plaintiff, United States of America, in the amount of $389,951.92 ($202,576.37 in principle and $187,375.55 in accrued interest).

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August 21, 2012.

Copies furnished to:

Counsel of Record
Unrepresented Party

_____
**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**